IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| AUDRY RAYBON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05cv276-D |
| | ) | (WO) |
| AMERICAN FIDELITY ASSURANCE | ) | |
| CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Before the court is Plaintiff Audry Raybon's ("Raybon") motion to remand, filed

April 11, 2005, in which Raybon asserts that subject matter jurisdiction is lacking.  (Doc.

No. 7.)  Raybon's motion is accompanied by a memorandum of law and an affidavit.

(Doc. No. 10 & Ex. A attached thereto.)  Defendants American Fidelity Assurance Co.

and James W. Brazell, Jr.,[1] filed a joint memorandum brief in opposition on April 26,

2005, contending that the court properly exercises diversity jurisdiction over this removed

case because Brazell, the only non-diverse Defendant, has been fraudulently joined.

(Doc. No. 15.)  After careful consideration of the arguments of counsel, the applicable

law and the record as a whole, the court finds that Raybon's motion to remand is due to

---

[1] The court refers to Defendants individually as "American Fidelity" and
"Brazell."

be granted and that this case is due to be remanded to the Circuit Court of Bullock

County, Alabama.

## II.  BACKGROUND

This action arises from Raybon's purchase of a Limited Benefit Specified Disease

Cancer Expense Policy.  On January 9, 1992, Raybon applied for the policy which

American Fidelity issued to her on or about March 1, 1992.  (Compl. ¶ 6 (attached to Not.

of Removal (Doc. No. 1)[2]; Cindy Smethers Aff. ¶ 5 (Ex. A to Doc. No. 15); Pl.

Application (unmarked Ex. to Doc. No. 15).)  Brazell, an agent for American Fidelity,

sold Raybon the policy.  Raybon and Brazell both are citizens of Alabama.  (Compl. ¶¶ 1,

3.)

Raybon's claims against Brazell are predicated on alleged representations and

omissions which "affected [] [Raybon's] decision to purchase the policy at issue."  (Pl.

Br. in Support of Mot. Remand at 8 (Doc. No. 10).)  Raybon avers that Brazell orally told

her that the insurance policy resembled a "'group' policy in that the premiums charged to

[] [Raybon] were the same as those charged to the 'group' or 'class.'"  (Compl. ¶ 8.)  In

an affidavit, filed together with her motion to remand, Raybon elaborates, stating that

Brazell represented that her "premiums would only increase if the entire 'group'

---

[2] Raybon filed a one-paragraph "amendment to the complaint" in which she corrected the spelling of Brazell's name.  (See attachment to Not. Removal (Doc. No. 1).) Herein, the court refers to the original Complaint which contains the substantive allegations against Defendants.

premiums increased and that [she] would not be singled out for premium increases." (Pl. Aff. at 1 (Ex. A to Doc. No. 10).)  Based on Brazell's foregoing representations, Raybon purchased the policy at issue.  (Id.)

Raybon, thereafter, received a copy of the policy.  (Id. at 2.)  Raybon avers that there was "nothing in the policy that seemed to contradict the representations made to [her] by Brazell."  (Id. at 2; Compl. ¶ 7.)  She points out that, consistent with Brazell's representations, the policy indicated that changes in premium rates would be based upon "persons of the same class in the same state." (Policy at 7 (Ex. 1 to Doc. No. 15); Compl. ¶ 22.)  Similarly, the cover page of the policy states in bold, uppercase print:  "THE COMPANY HAS THE RIGHT TO CHANGE PREMIUM RATES ON A CLASS BASIS." (Policy at 1.)

Raybon asserts that, approximately two years after the effective date of her policy, "the premiums steadily increased on the policy."  (Pl. Aff. at 2 (Ex. A to Doc. No. 10).) She was subject to six premium increases between July 1994 and October 2000.  (Compl. ¶¶ 10-15.)  During the latter six years, Raybon's premiums increased from $36.85 per month to $102.38 per month and, thereafter, "continued" to rise.  (Id.)  Yet, Raybon says that "[t]here was never any explanation provided to [her] about the reasons for the increases in premiums."[3]  (Pl. Aff. at 2 (Doc. No. 10 at 2, Ex. A).)

_____

[3] Raybon allowed her policy to lapse in April 2001.  (William R. Corum Aff. at ¶ 7 (Ex. B. to Not. of Removal (Doc. No. 1).)  The Complaint's allegations suggest that she could no longer afford the policy due to the continual increases in the premiums. (See, e.g., Compl. ¶ 32; see also Pl. Resp. to Def. Mot. Dismiss at 3 (Doc. No. 9).)

3

Because Defendants failed to inform Raybon why her premiums had increased, Raybon alleges that she had no way to discover the fraud and did not discover the fraud until she consulted an attorney.  (Compl. ¶ 21.)  In her affidavit, Raybon explains that, in January 2005, she retained an attorney on an unrelated insurance matter.  During the course of that representation, Raybon's attorney reviewed the policy at issue in this case.  The attorney, thereafter, ascertained that "Defendants were calculating their enormous premium increases based upon [] Raybon's individual age and potential losses, as opposed to the group experience."  (Pl. Aff. at 2 (Ex. A to Doc. No. 10).)  At that time, Raybon realized "the misrepresentations made to [her] by Brazell at the point of sale" and "discovered . . . that the cancer premiums were increased in a disproportionate way for [her] policy and/or that the 'group' that [she] was part of was not a true group."  (Id.)

Although Defendants had "superior knowledge" and knew the "actual basis for the premium increases," they suppressed, concealed and misrepresented the method for calculating premiums.  (Compl. ¶¶ 18, 20, 25, 28, 36.)  Raybon reiterates that, "[a]t no time prior to January of 2005," was she notified by Defendants that "the premium increases were based on individual factors related to [] [her,] nor was there anything in the insurance policy or the other documents provided to [] [her] by Defendants to indicate this."  (Id. ¶ 22.)  She states that she "would not have purchased the policy in 1992 . . . if [Brazell] had told her the truth about the policy."  (Pl. Aff. at 2.)

Raybon commenced this lawsuit on February 22, 2005, by filing a Complaint in the Circuit Court of Bullock County, Alabama.  The Complaint contains five counts.  In Counts I - IV, which are lodged against "Defendants" in the plural, Raybon brings claims for intentional, reckless and/or negligent misrepresentation (Count I), fraudulent suppression (Count II), conspiracy (Count III), and breach of fiduciary duty (Count IV). (Compl. ¶¶ 23-40; Pl. Br. in Support of Mot. Remand at 2 (Doc. No. 10).)  Count V, a breach of contract claim, names only American Fidelity.  (Compl. ¶¶ 41-45.)

Defendants timely removed this case to the United States District Court for the Middle District of Alabama on March 24, 2005, pursuant to 28 U.S.C. § 1441(b). Defendants assert that the court exercises subject matter jurisdiction over this case through diversity of citizenship and the requisite amount in controversy, pursuant to 28 U.S.C. § 1332(a).  Defendants contend that complete diversity exists because the only non-diverse Defendant, Brazell, was fraudulently joined to defeat federal jurisdiction.[4]

Urging the court to remand this case to state court, Raybon contends that complete diversity does not exist because Brazell shares the same citizenship as Raybon and that the Complaint "clearly states a cause of action" against Brazell.  (Pl. Br. in Support of

---

[4] Brazell also filed a motion to dismiss on March 24, 2005, contending that all claims against him are due to be dismissed for failure to state a claim upon which relief can be granted.  (Doc. No. 3.)  Raybon responded to this motion on April 11, 2005.  (Doc. No. 9.)  In ruling on the instant motion to remand, the court has considered the arguments offered in support of and in opposition to the motion to dismiss, as the substantive arguments of the two motions overlap.

Mot. Remand at 8 (Doc. No. 10).)  Raybon also disputes that Defendants have

demonstrated that the amount in controversy exceeds the jurisdictional limits of the court.

(Id. at 15-17.)

### III.  STANDARD OF REVIEW

Defendants, as the parties removing an action to federal court, have the burden of

establishing federal jurisdiction.  See Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir.

1996).  Because the removal statutes are strictly construed against removal, generally

speaking, all doubts about removal must be resolved in favor of remand.  See Shamrock

Oil and Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Butler v. Polk, 592 F.2d 1293,

1296 (5th Cir. 1979).

### IV.  DISCUSSION

#### A.  Fraudulent Joinder

A federal district court has original jurisdiction over cases involving citizens of

different states where the amount in controversy exceeds $75,000, exclusive of interest

and costs.  See 28 U.S.C. § 1332(a).  "Diversity jurisdiction under 28 U.S.C. § 1332

requires complete diversity–every plaintiff must be diverse from every defendant."

Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1359 (11th Cir. 1996), abrogated on

other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).  Therefore,

where the parties are diverse and the amount in controversy is sufficient, a defendant has the statutory right to remove an action from state to federal court.  See 28 U.S.C. § 1332(a).

The Supreme Court, however, has long recognized that diversity jurisdiction "cannot be defeated by a fraudulent joinder of a residential defendant having no real connection to the controversy."  Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).  When determining whether complete diversity exists, courts disregard the citizenship of fraudulently-joined defendants.  See Tedder v. F.M.C. Corp., 590 F.2d 115, 117 (5th Cir. 1979).

In this case, Defendants argue that Brazell's joinder is fraudulent because there is no possibility that Raybon could establish a cause of action against Brazell in state court. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). Defendants' burden is heavy and requires proof by clear and convincing evidence. Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989); see also Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (stating that "[t]he burden of the removing party is a 'heavy one'").  The court is precluded from "weigh[ing] the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Crowe, 113 F.3d at 1538.  "'If there is even a possibility that a state court would find that the complaint states a cause of action against . . . the resident defendant[], the federal court must find that the joinder is proper and remand the case to the state court.'"  Id. (citation omitted).  In other words, "[t]he plaintiff need not have a winning case against

7

the allegedly fraudulent defendant; he [or she] need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original).

When evaluating Defendants' contentions for removal, the court construes the facts and the controlling law in the light most favorable to Raybon. See Cabalceta, 883 F.2d at 1561. The court also must base its decision on Raybon's "pleadings at the time of removal; but the court [also] may consider affidavits and deposition transcripts submitted by the parties." Crowe, 113 F.3d at 1538. It is well settled that, upon allegations of fraudulent joinder, federal courts may look beyond the pleadings to determine if the joinder is a fraudulent device to prevent removal. See Cabalceta, 883 F.2d at 1561; Williams v. Atlantic Coast Line R.R. Co., 294 F. Supp. 815, 816 (S.D. Ga. 1968).

### 1. Fraud Claims

The court begins its analysis by determining whether Brazell has been fraudulently joined on the fraud claims set forth in Counts I and II. In these two counts, Raybon contends that Brazell made false certain misrepresentations and fraudulently concealed the basis for the premium increases, thereby inducing Raybon to purchase the insurance policy. Specifically, in Count I, Raybon alleges that she was "defrauded [] through [] Defendants' intentional, reckless, and/or negligent misrepresentations and suppressions of material fact concerning the premiums charged for the 'class' of people that [Raybon] belonged to and the increases in said premiums, which [Raybon] justifiably relief upon to

8

her detriment." (Compl. ¶ 25.)  In Count II, Raybon asserts that Defendants "wrongfully concealed and suppressed from [her] the true nature of the product she was purchasing and that her premiums would be calculated on individual factors, including her age, race, and sex." (Id. ¶ 28.)  Raybon says that she "would not have purchased the policy if she had known the true facts surrounding the premium pricing." (Id. ¶ 29.)

Defendants contend that there is no possibility that Rabyon can state a cause of action on her fraud claims in state court based on the statute of limitations and on the merits.  The court examines first the statute of limitations argument.

(a) Statute of Limitations

The issue is whether there is any possibility that an Alabama court could find that the statute of limitations has not run on Raybon's fraud claims against Brazell. Actions for fraud are subject to a two-year statute of limitations.  See Ala. Code § 6-2-38(l) (1993) ("All actions for injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."); see also Foremost Ins. Co. v. Parham, 693 So. 2d 409, 417 (Ala. 1997) (Under Alabama law, "[c]laims of fraudulent misrepresentation and suppression are subject to a two-year statute of limitations.").

Pursuant to § 6-2-3 of the Code of Alabama, the two-year statute of limitations begins to run "when the plaintiff discover[s] the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care." Foremost, 693 So. 2d at 417;

9

Ala. Code § 6-2-3 (1993). Section 6-2-3 of the Code of Alabama, which is referred to as the "saving clause," _Ex parte_ Seabol, 782 So. 2d 212, 216 (Ala. 2000), reads as follows: "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code § 6-2-3 (1993).

When a plaintiff is deemed to have discovered the fraud is governed by the "reasonable reliance" standard. Foremost, 693 So. 2d at 421-22. Generally, the issue of "when a party discovered or should have discovered fraud" for purposes of tolling the statute of limitations is a jury question. McGowan v. Chrysler Corp., 631 So. 2d 842, 845 (Ala. 1993). There are some factual scenarios, discussed below, which permit a court to make the finding as a matter of law.

Defendants point out that Raybon's claims against Brazell are based upon alleged representations upon which Raybon relied in purchasing the policy at issue and purported omissions which would have affected her decision to purchase the policy. Yet, Raybon did not assert her fraud claims until 2005, some thirteen years after the alleged fraud occurred. (Id.) Because more than two years has passed since Brazell committed the alleged fraud, Defendants contend that "it is clear" that the statute of limitations has run on these claims. (Defs. Br. in Opp. to Mot. to Remand at 7-8 (Doc. No. 15).)

Raybon, however, avers that the two-year statute of limitations was tolled until her discovery of the fraud in 2005 upon consultation with an attorney. (Pl. Br. in Support of

Mot. Remand at 2 (Doc. No. 10); Pl. Aff. at 2 (Ex. A to Doc. No. 10); Compl. ¶ 21.)

Because she commenced her lawsuit the same year of her discovery, Raybon contends

that her fraud claims are timely.  (Pl. Br. in Support of Mot. Remand at 2, 12 (Doc. No.

10); Pl. Aff. at 2 (Ex. A to Doc. No. 10).)

 Raybon asserts that she had no way to discover the fraud prior to 2005.  For

instance, she recognizes that, under the applicable "reasonable reliance" standard, where

an insured is capable of understanding the policy and the policy contains terms which

plainly contradict the agent's alleged misrepresentations, the statute of limitations begins

to run on the date the insured receives the policy, regardless of whether the insured reads

the policy.  (Pl. Br. in Support of Mot. Remand at 10-12 (Doc. No. 10) (citing Foremost,

693 So. 2d at 421-22); see also Ex parte Caver, 742 So. 2d 168, 172-73 (Ala. 1999)

(stating that Foremost "foreclosed the right of a person to blindly rely on an agent's oral

representations or silence to the exclusion of written disclosures in a policy").  She

contends, however, that she could not have discovered the misrepresentations and

omissions at the time she purchased the policy and received a copy of it.  Specifically,

Raybon avers that the policy documents did not alert her to the fraud because the terms of

policy corresponded with, not contradicted, Brazell's oral representations that premium

increases would be imposed only on a class-wide basis.  (Pl. Br. in Support of Mot.

Remand at 10-12 (Doc. No. 10); see also Pl. Resp. to Mot. Dismiss at 3 (Doc. No. 9).)

 The court agrees with Raybon that the facts of Foremost are distinguishable from

those presented in this case.  The Foremost opinion triggers the running of the statute of

11

limitations where an insured possesses documents saying one thing, but is told another by the insurance agent.  Here, Raybon is not alleging that she relied on Brazell's oral representations and/or silence to the exclusion of contrary, written disclosures in the contract.  Instead, she is saying that the terms of the policy reaffirmed what Brazell told her.  (Compl. ¶ 22.)  Because Raybon is alleging that the policy's terms were consistent with Brazell's alleged representations about the policy, the court finds that there is a possibility that a state court would conclude that Raybon's fraud claims did not accrue on the date Raybon received a copy of her policy.

Brazell, however, suggests that, at the very least, the premium increases should have alerted Raybon of the purported fraud and that she had a duty to inquire as to the basis of the premium increases.  Brazell points out that the "last" premium increase cited by Raybon occurred in October 2000 and that more than two years has passed since Raybon commenced this lawsuit.  (Brazell Mot. Dismiss ¶ 5 (Doc. No. 3); Compl. ¶ 15.) Raybon, though, contends that, because no explanation was provided to her when her premiums increased (Pl. Aff. at 2 (Ex. A to Doc. No. 10)), she had no reason to suspect that the increases were not class-wide as represented to her orally and in the policy.

The court agrees with Raybon that it is arguable, given the absence of contradictory terms in the insurance policy, that Raybon could not have deduced from the mere fact that her premiums increased that Brazell's representation that premium rates were assessed based on a group or class basis was false.  Another court in this district recently reached a similar conclusion.  See Shields v. Washington Nat'l Ins. Co., 375 F.

Supp. 2d 1346 (M.D. Ala. 2005) (Albritton, J.) (reiterating that, for fraudulent joinder

purposes, the statute of limitations did not preclude remand of the insured's fraud claim

where "although [the insured's] premiums increased, he had no reason to suspect that the

increase was not based on the 'group claims experience,'" as dictated by the terms of the

policy).

Whether Defendants ultimately will prevail on their statute of limitations defense

is not at issue, and the court does not attempt to predict or speculate on Raybon's ultimate

prospects of success.  The court is limited to ascertaining whether there is a possibility

that in state court Raybon can overcome the statute of limitations bar.  See Triggs, 154

F.3d at 1287.  Given the facts presented by Raybon, and construing all factual and legal

inferences therefrom in favor of Raybon, see Cabalceta, 883 F.2d at 1561, the court

cannot rule out the possibility that a state court would conclude that the statute of

limitations has not run on her fraud claims.

Finally, on the issue of the statute of limitations, the court has not overlooked

Defendants' contention that Raybon's allegation in her Complaint that she "did not

discover [] Defendants' fraudulent conduct until January 2005" is too conclusory to save

Raybon's fraud claims from the two-year time bar.  (Doc. No. 15 at 8; Doc. No. 3 at 2.)

In support of their argument, Defendants cite Smith v. National Security Insurance Co.,

860 So. 2d 343 (Ala. 2003).  In that case, which was on appeal from a judgment entered

in favor of the insurer on a motion to dismiss, the complaint alleged the date of discovery

of the fraud, but did not allege that the insurer had concealed the fraud or prevented the

plaintiff-insured from discovering the basis of her cause of action.  The Supreme Court held the plaintiff's allegations were too general and non-specific to toll the running of the limitations period.  See id. at 345-47.

Smith, however, is distinguishable procedurally from this case because the standard applicable on a motion to dismiss restricts a court's review to the four corners of the complaint.  See id. at 345.  To the contrary, on a motion to remand where fraudulent joinder is at issue, the court is not precluded from examining evidence outside the pleadings.  See Crowe, 113 F.3d at 1538.  Raybon's affidavit supplements the Complaint's allegations and, as discussed herein, has provided the requisite factual specificity for the court to evaluate her reliance on § 6-2-3's tolling provision.[5]

---

[5] The court notes that Raybon also contends that Defendants may not assert a statute of limitations defense for purposes of proving fraudulent joinder because, assuming the defense is viable, the defense also would bar claims asserted against American Fidelity, the non-resident Defendant.  (Pl. Br. in Support of Mot. Remand at 8 (Doc. No. 10 at 12-15).)  In support of her position, Raybon cites Chesapeake & O. Ry. v. Cockrell, 232 U.S. 146, 153 (1914), and Boyer v. Snap-On Tools, Inc., 913 F.2d 108, 112-13 (3d Cir. 1990).  In Boyer, citing Chesapeake, the Third Circuit held that the trial court erred in denying a motion to remand on the basis that a release signed by the plaintiff barred his claim against the resident defendant because the release, if valid, also would preclude the plaintiff from recovering against the diverse defendants.  The court held "that where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses."  Id. at 113.
    Here, the court has determined that there is a possibility that a state court would find that Raybon's fraud claims are not barred by the statute of limitations.  It is, thus, unnecessary for the court to decide whether the Boyer holding applies to the facts of this case, as Boyer found error where the district court's analysis of the fraudulent joinder defense also amounted to a substantive determination on the merits that the claims against the non-diverse defendants were barred by the same defense.

14

In the alternative to the statute of limitations argument, Defendants challenge the merits of Raybon's fraud claims.  Under Alabama law, to succeed on a fraudulent suppression claim, a plaintiff must show: "'(1) a duty to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; and (4) action by the plaintiff to his injury.'" Norman v. Amoco Oil Co., 558 So. 2d 903, 905 (Ala. 1990) (quoting Wilson v. Brown, 496 So. 2d 756, 759 (Ala. 1986)).  A claim of fraudulent misrepresentation also comprises four elements: "'(1) a false representation (2) concerning a material existing fact (3) [reasonably] relied upon by the plaintiff (4) who was damaged as a proximate result.'" Fisher v. Comer Plantation, Inc., 772 So.2d 455, 463 (Ala. 2000) (quoting Baker v. Bennett, 603 So.2d 928, 935 (Ala. 1992)).

Defendants contend that it is legally impossible for Raybon to prevail on a fraudulent misrepresentation claim because Brazell's representations concerning calculation of premium rates were not false.  (See Defs. Br. in Opp. to Mot. to Remand at 9 (Doc. No. 15 at 9).)  Concomitantly, Defendants' position is that there was no concealment of any material fact pertaining to the calculation of premium rates.  Thus, the reason which Raybon proffers to circumvent the statute of limitations bar is the very reason upon which Defendants rely to support their alternative argument as to the merits of the fraud claims.  Specifically, Defendants emphasize that Raybon admits that Brazell's representations concerning premium increases were "completely consistent" with the policy language which provides that American Fidelity "has the right to change"

the table of rates from which premiums are calculated.  (Defs. Br. in Opp. to Mot. to

Remand at 9-10 (Doc. No. 15) (citing Ex. A. ¶ 5, Ex. 1 at 7).)

Because Brazell did not misrepresent the terms of the policy, but in essence quoted

from it, Defendants maintain that the representations made by Brazell cannot be deemed

false, thus, precluding Raybon from establishing an essential element of her claims.  (Id.)

"In short," says Defendants, Raybon "concedes that Brazell represented to [her] exactly

what the [p]olicy actually provided, which clearly does not give rise to any cause of

action" for fraud.  (Id.)  Defendants contend that, if the insurance contract did not perform

in accordance with its terms, any claim "would, at most, constitute a cause of action only

against American Fidelity for breach of its contract with [Raybon]."  (Id.)  Relatedly,

Defendants contend that Raybon's "claims concerning wrongful premium increases can

only be maintained against American Fidelity because Brazell had absolutely no role with

the premium increases."  (Id. at 11.)

In support of their position, Defendants cite Justice J. Gorman Houston's special

concurrence in Dickinson v. Land Developers Construction Co., Inc., 882 So. 2d 291

(Ala. 2003) (Houston, J., concurring specially).  Therein, as pointed out by Defendants,

Justice Houston, quoting from prior precedent, reiterates that "it is a universally held

principle that the 'mere failure to perform a [contractual] promise does not constitute

fraud.'"  Id. at 304.  Defendants, however, have omitted other discussion by Justice

Houston in his specially concurring opinion.  While stressing that a plaintiff "cannot

convert the mere failure to perform or to fulfill a contractual promise into a fraud claim,"

16

id. at 303, Justice Houston recognized that "'[u]nder Alabama law, a plaintiff can, in some instances, maintain a cause of action for fraud and breach of contract arising from the same general factual circumstances.'"  Id. (quoting Deupree v. Butner, 522 So. 2d 242 (Ala. 1988)).  Justice Houston wrote:

> In Deupree, we held that the plaintiffs, who had signed a contract to purchase a Florida townhome from the defendant developer but had not yet closed on the townhome, could recover for both fraud and breach of contract based on the developer's representations to the plaintiffs that there would be no problems in acquiring the necessary governmental approval for a boat slip appurtenant to the property, when in fact there were substantial problems.  522 So.2d at 243-45.  We held that there was evidence indicating that the plaintiffs would not have closed on the townhome had the defendant disclosed the truth about the governmental approval process, and we held that the plaintiff could recover for fraudulent suppression.

Id. at 303 (quoting Deupree, 522 So. 2d at 245); see also Combined Servs., Inc. v. Lynn Electronics Corp., 888 F.2d 106, 107 (11th Cir. 1989) (recognizing that "Alabama courts have consistently held that, where a party fraudulently conceals or misrepresents facts relating to its intention or ability to perform under a contract 'a party may recover judgment in an action at law for both breach of contract of fraud'") (citing Deupree, supra, among other cases).

Significantly, Justice Houston cited as "helpful and accurate" a Florida court opinion which expounded upon the "'very different causes of action'" for fraud and breach of contract.  Dickinson, 882 So. 2d at 304-05 (quoting La Pesca Grande Charters, Inc. v. Moran, 704 So. 2d 710, 712 (Fla. Dist. Ct. App. 1998)).  In particular, in contravention to Defendants' position in this case, the Florida court, as quoted by Justice

Houston, observed: "'The notion that a knowing fraud perpetrated to induce someone to enter into a contract can be extinguished by the simple expedience of including the fraudulent representation in the contract makes no sense.'"[6] Id. at 304-05 (quoting La Pesca Grande Charters, Inc., 704 So. 2d at 712-13).

Justice Houston's clarification of when a simultaneous action for breach of contract and fraud may proceed is enlightening for purposes of ascertaining whether a possibility exists that Raybon has a viable fraud claim against Brazell. Here, Raybon is not contending that Brazell implemented the decision to raise Raybon's premiums. Rather, Raybon's fraud claims are based on allegations that she was sold a cancer insurance policy which Brazell represented was akin to a group insurance policy with premium increases calculated on a group or class basis, but which, in reality, was a policy

---

[6] To illustrate, the Florida court stated:

"[s]uppose someone offers to sell you a particular emerald for $5,000 and, in order to induce you to buy it, represents to you that it is 'top quality' and that it has not been filled. You buy it based on the factual representation that the stone is unfilled but later you learn that it, in fact, had been filled. If the seller knew the emerald had been filled but lied in order to trick you into agreeing to buy it, you have a cause of action for fraud with all its attendant remedies. You may also have an action for breach of contract. The fact that the same measure of damages (the difference in value between a filled emerald and an unfilled emerald) may be available under both the tort and the breach of contract does not cause the tort to disappear. Nor does the inclusion of the fraudulent representation as an express warranty in the contract preclude the tort remedy."

Dickinson, 882 So. 2d at 304-05 (quoting La Pesca Grande Charters, Inc., 704 So. 2d at 712-13).

where premiums were calculated based on individual risk factors.  (Compl. ¶¶ 7-8, 28.)
As in Deupree and the foregoing discussion from Justice Houston, Raybon has alleged
that Brazell knew the true method upon which Raybon's premiums would be calculated,
but fraudulently and knowingly misrepresented and concealed facts pertaining to the
performance of this aspect of the insurance contract, thereby inducing Raybon to
purchase the insurance policy.  (Id. ¶¶ 17, 20, 25, 28.)

Based on Justice Houston's discussion of Alabama law, the court finds that it is
arguable that a state court would apply or extend those legal principles to Raybon's
causes of action against Brazell for fraud.  See Crowe, 113 F.3d at 1542 (to demonstrate
an arguable claim, there only must exist "'a reasonable basis for predicting that the state
law *might* impose liability on the facts involved'") (citations omitted and emphasis in
original).  Construing the facts and any ambiguities in the law in the light most favorable
to Raybon, a possibility exists, however slight, that Raybon could succeed on a fraud
claim.

With that said, the court recognizes that Defendants have submitted evidence
which contradicts Raybon's allegations.  Defendants have filed an affidavit from Cindy
Smethers, who is employed as American Fidelity's assistant vice president and product
actuarial manager.  (Cindy Smethers' Aff. (Ex. A to Doc. No. 15).)  The attestations in
Smethers' affidavit are contrary to Raybon's allegations that her premium increases were
calculated based on her individual history.  Smethers states that "the premium rate
increases for Alabama policy holders of the C-5 policy, like the policy issued to []

19

Raybon, were applied equally to all . . . C-5 policy holders in this state with the same

family status, regardless of age, sex, race or previous individual claims experience."  (Id.

at 8.)

Smethers' affidavit, however, is insufficient to establish that there is no possibility

that Raybon could establish a fraud claim against Brazell.  While the procedure for

resolving a claim of fraudulent joinder is "similar" to that employed for ruling on a

motion for summary judgment, Crowe, 113 F.3d at 1538, the Eleventh Circuit has

cautioned that the jurisdictional issue "'must not subsume substantive determination.'"

Id. at 1538 (quoting B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A

1981)).  Even if the court presupposed that a state court ultimately would determine that

Defendants' evidence entitles Defendants to summary judgment,[7] it could not on that

basis alone rule that the joinder of Brazell is fraudulent.  Whether a claim is "arguable"

under the fraudulent joinder analysis requires something less than that required to survive

summary judgment.  To prevail on a motion to remand the plaintiff "need not show that

he [or she] could survive in the district court a motion for summary judgment filed by that

in-state defendant." Crowe, 113 F.3d at 1541.

In Crowe, the Eleventh Circuit held that there was a conflict in the facts between

the defendant's affidavit and the plaintiff's facts and that this conflict sufficed to establish

---

[7]  The court emphasizes that it espouses no opinion on the probability that Raybon
will succeed on the merits because to do so would overstep the court's boundaries in
ruling on a motion to remand.

that there was no fraudulent joinder.  <u>See</u> <u>id.</u>  Here, as in <u>Crowe</u>, Defendants' evidence

may create a controversy as to how the premium increases were calculated.  On the one

hand, Raybon swears that the increase took into account Raybon's individual risk factors;

on the other hand, Defendants' evidence establishes that the premium increases were

implemented identically for the whole class without consideration of any policyholder's

characteristics.  The court, however, must resolve all disputes and factual inferences in

favor of Raybon.  <u>See</u> <u>Cabalceta</u>, 883 F.2d at 1561.  At the very least, based on the

competing sworn averments, the court finds that an arguable claim for fraud exists based

on the facts allegedly concealed and misrepresented.

     In sum, the court finds that there arguably is a factual basis for predicting that state

law might impose liability against Brazell on the facts presented based on a fraud theory

and that, therefore, there is no fraudulent joinder.  Because Brazell, a non-diverse

defendant, was not fraudulently joined, his citizenship cannot be disregarded.

Consequently, complete diversity is lacking as required pursuant to 28 U.S.C. § 1332(a),

and  this case is due to be remanded to state court from whence it was removed.


### B. <u>Amount in Controversy</u>

     Defendants argue that, because Raybon asks for unspecified compensatory,

punitive and mental anguish damages, it is more likely than not that Raybon will obtain a

jury verdict in excess of $75,000.  (Defs. Br. in Opp. to Mot. to Remand at 4-5, 11-15

(Doc. No. 15).)  Because the court concludes that complete diversity does not exist, the court need not determine if the amount in controversy is satisfied.

## VI. ORDER

Accordingly, it is CONSIDERED and ORDERED that Raybon's motion to remand be and the same is hereby GRANTED and that this action be and the same is hereby REMANDED to the Circuit Court of Bullock County, Alabama, pursuant to 28 U.S.C. § 1447(c).

 The Clerk is DIRECTED to take all steps necessary to effectuate said remand.

DONE this 19th day of August, 2005.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE